# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL BEHM, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) | |
| ) | **CIVIL ACTION NO.: _____** |
| v. ) | |
| ) | **CLASS ACTION COMPLAINT** |
| GENERAL MOTORS LLC, ONSTAR, LLC, and LEXISNEXIS RISK SOLUTIONS INC., ) ) ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

Plaintiff Michael Behm ("Plaintiff"), by and through his attorneys, on behalf of himself and all others similarly situated (the "Class Members"), alleges as follows:

## I.    INTRODUCTION

1.    Plaintiff brings this class action against General Motors, LLC ("GM"), OnStar, LLC ("OnStar"), and LexisNexis Risk Solutions, Inc. ("Lexis") (collectively, "Defendants"), for their collection of and sharing or sale of drivers' data without their notice, knowledge, or consent.

2.    This case arises out of GM and OnStar's secretive accessing, recording, collecting, and storing of drivers' driving Telematics Data which include, but are not limited to, events related to acceleration, hard braking, and high speeds, as well as Vehicle Identification Numbers ("VINs") and location or GPS data ("Telematics Data"). GM and OnStar collect this Telematics Data, without drivers' knowledge or consent, then share and/or sell these data to third parties, such as Lexis, again without knowledge or consent

from the drivers. Lexis then shares this data with other third parties including auto insurance companies, again without drivers' knowledge or consent, in violation of their privacy rights. This conduct has led to additional injury, including increased insurance premiums or denial of auto insurance coverage altogether, in cases where auto insurance companies interpret the Telematics Data to demonstrate dangerous driving behavior.

3.     OnStar markets itself as offering high-tech connectivity to provide "heightened" driving experience by offering Automatic Crash Response, Emergency Services, and Roadside Assistance whereby it utilizes wi-fi and location information to assist drivers in the event of an accident, among other services. For some GM vehicle purchasers, OnStar offers this service free of charge for a limited time, so they are not even aware of agreeing to the OnStar subscription. Even when drivers actively subscribe to OnStar, they are not aware that GM and OnStar secretly track and compile Telematics Data and then share it with or sell it to third parties, such as Lexis. Lexis then compiles this data and shares it with or sells it to auto insurance companies without drivers' knowledge or consent. Auto insurance companies may use this data to increase auto insurance premiums or to deny coverage altogether in some cases.

4.     GM and OnStar, however, failed to adequately disclose their accessing, recording, collecting, storing, disclosing, sharing, and/or selling of the drivers' Telematics Data. In fact, they deliberately concealed this information from Plaintiff and the Class Members, as well as the general public.

5.     It was not until the publication of the March 11, 2024 New York Times article "Automakers Are Sharing Consumers' Driving Behavior With Insurance

Companies" that Plaintiff and Class Members were made aware of Defendants' accessing, recording, collecting, storing, disclosing, sharing, and/or selling of their Telematics Data. Plaintiff and Class Members have suffered damages as a result of the sharing of their Telematics Data.

6.     Plaintiff and Class Members bring this action for damages and injunctive relief for claims against Defendants for common law invasion of privacy and unjust enrichment, and violations of the Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.13, et seq., the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, et seq., the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69, et. seq., and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et. seq.

## II.    JURISDICTION AND VENUE

7.     This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value or $5,000,000 exclusive of interest and costs and more than two-thirds of the Class resides in states other than the state in which Defendants are citizens and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d)(2) do not apply.

8.     Venue is proper in this District pursuant to pursuant to 28 U.S.C. §1391, because Plaintiff suffered injury as a result of Defendants' acts in this district, many of the acts and transactions giving rise to this action occurred in this district, and Defendants conduct substantial business in this district.

### III.   PARTIES

9.      Plaintiff Michael Behm is, and at all relevant times has been, a resident of Eden Prairie, Minnesota. On or about May 2022, Plaintiff purchased a 2022 Cadillac Escalade from Coon Rapids Chrysler Jeep Dodge RAM in Coon Rapids, Minnesota, which was manufactured and sold by GM and equipped with OnStar. Plaintiff's GM vehicle came with complimentary OnStar services at the time of purchase. Plaintiff did not sign up for OnStar services, nor was he notified that GM would collect and share or sell his Telematics Data through OnStar. Plaintiff was also unaware of and did not consent to Lexis illegally obtaining, processing, or sharing his Telematics Data collected and shared by GM and OnStar.

10.     Defendant GM is a Delaware limited liability company with its headquarters and principal place of business in Detroit, Michigan. GM is an American multinational automotive manufacturing company that owns and manufactures automobile brands including Chevrolet, GMC, Cadillac, and Buick, and sells automobiles throughout the United States, including in this district, and internationally. At all relevant times, GM manufactured and sold vehicles equipped with OnStar.

11.     Defendant OnStar is a Delaware limited liability company with its headquarters and principal place of business Detroit, Michigan. OnStar is a subsidiary of GM and provides communications, in-vehicle security, emergency services, navigation, remote diagnostics system and information services through the United States, including in this district. At all relevant times, OnStar's provided OnStar Smart Driver service which collected Plaintiff's and Class Members' Telematics Data.

12.     Both GM and OnStar are wholly owned subsidiaries of General Motor Holdings, LLC.

13.     Defendant Lexis is a Delaware corporation with its headquarters and principal place of business in Alpharetta, Georgia. Lexis provides the auto industry and insurance companies with drivers' Telematics Data and markets itself as an entity that can provide driver behavior data to improve insurance quotes and underwriting. At all relevant times, Lexis obtained Plaintiff's and Class Members' Telematics Data from GM and OnStar and shared it with or sold it to third parties, including auto insurance companies.

## IV.   FACTUAL ALLEGATIONS

14.     Beginning in 2015, GM equipped many, if not all, of its automobiles with OnStar software and related applications.

15.     The OnStar-related applications – including MyChevrolet, MyBuick, and MyCadillac – allow GM and OnStar to access, record, collect, store, disclose, share, and/or sell drivers' personal driving behavior data, commonly referred to as drivers' Telematics Data, which include information such as a driver's average speed, percentage of time a driver exceeds eighty miles per hour, the frequency and intensity of acceleration, the frequency and intensity of braking, high speeds, and late night driving, as well as Vehicle Identification Numbers ("VINs") and location or GPS data.

16.     Despite GM's assertion to the contrary, OnStar collects the drivers' Telematics Data, then shares it with third parties, including Lexis and auto insurance companies, all without Plaintiff's and Class Members' knowledge or consent.

17.     Neither GM nor OnStar disclosed to Plaintiff and Class Members that their

Telematics Data were being or would be accessed, recorded, collected, stored, disclosed, and/or shared. Moreover, neither GM nor OnStar disclosed their sale of this Telematics Data to third parties, like Lexis, who then resell it to auto insurance companies. Some of the Telematics Data are interpreted as dangerous driving behavior and is used by auto insurance companies to increase auto insurance premiums or, in some cases, deny coverage altogether.

18.     GM and OnStar make false, misleading, and deceptive representations to Plaintiff and Class Members that OnStar is "optional to customers" and that "customers can [] unenroll [] at any time."[1] However, Plaintiff and Class Members are not even made aware of this "option" because information regarding OnStar is obscurely placed in the fine print of lengthy, ambiguous policies. The existence of this "option" is effectively concealed from some drivers, particularly those that were not even aware that they were subscribing to OnStar service simply by purchasing a GM vehicle.

19.     Defendants claim to have obtained Plaintiff's and Class Members' consent for the collection and dissemination of Telematics Data. The GM and OnStar agreements, however, fail to adequately disclose how they access, record, collect, store, disclose, share, and/or sell Plaintiff's and Class Members' Telematics Data with third parties, including Lexis and auto insurance companies. In fact, GM and OnStar use a variety of confusing, misleading, and lengthy policies, which include terms obscurely placed in the fine print.

---

[1] Kashmir Hill, *Automakers Are Sharing Consumers' Driving Behavior With Insurance Companies*, NEW YORK TIMES (Mar. 11, 2024, https://www.nytimes.com/2024/03/11/technology/carmakers-driver-tracking-insurance.html).

20.     GM's User Terms for Application Services[2] states GM "*may* collect, use, and share information about you, including the location of your Device or your Vehicle *as described in the Privacy Statement for Application Services available at www.onstar.com/privacy*[.]" (emphasis added). This hyperlink directs Plaintiff and Class Members to a new webpage.

21.     The OnStar User Terms for Connected Vehicle Services[3] separately states:

> GM collects, uses, and shares information from and about You and your Vehicle. The GM Privacy Statement describes what GM does with that information. *You consent to the collection, use, and sharing of information described in the Privacy Statement* and in any revisions to the Privacy Statement, which may be modified as described in that document.

(emphasis added).

22.     To add further confusion, OnStar has an additional Privacy Statement for Application Services[4], which states OnStar "collect[s] information from you as described in the OnStar Privacy Statement."

23.     Finally, GM and OnStar have an additional joint Privacy Statement[5] to

---

[2] *User Terms for Application Services*, https://www.onstar.com/content/dam/onstar/na/us/en/index/legal/user-terms-for-applications-servies/02-pdfs/user-terms-for-application-services.pdf (last accessed April 25, 2024).
[3] *User Terms for Connected Vehicle Services*, https://www.onstar.com/content/dam/onstar/tcps/html/us/20180227/terms_conditions.html (last accessed April 25, 2024).
[4] *Privacy Statement for Application Services*, https://www.onstar.com/content/dam/onstar/na/us/en/index/legal/legal-privacy-statement-jan012011/02-pdfs/Privacy-Statement-for-Application-Services.pdf.html (last accessed April 25, 2024).
[5] *Privacy Statement*, https://www.onstar.com/content/dam/onstar/tcps/html/us/20180501_cl/privacy_statement.html (last accessed April 25, 2024).

inform Plaintiff and Class Members as to how they "collect, use, and share your information when you use GM vehicles, products, services, websites, infotainment systems, social media sites, and mobile applications for connected vehicle services (products and services)." This policy states they *may* share data with third parties "where you have elected to receive a service from them and/or authorized them to request data from GM (for example, financial organizations who offer financing for the purchase or lease of GM vehicles *or usage based insurance providers*)." This single sentence, buried down in one of the many policies, provides no basis for the conduct at issue in the present litigation, as it states the driver information would be shared *only* with those whom GM had a business relationship *related to the operation of the vehicle* (*i.e.*, Sirius XM), research, dealers, and third parties for marketing activities, or where the drive *elected* to receive a service. None of these situations apply here.

24.     By its own terms, the OnStar Privacy Statement only allows OnStar to share data with third parties where the driver has *elected* to receive a service from those specific third parties and/or *authorized* those specific third parties to request data from GM. Plaintiff and Class Members did not elect to receive *any* service from Lexis, let alone a service whereby Lexis compiles their Telematics Data to report to auto insurance providers against Plaintiff's and Class Members' own privacy rights and interest. Because Plaintiff and Class Members never elected to receive such services Lexis is not authorized to request or obtain, much less share the drivers' Telematics Data under the clear terms of GM's and OnStar's own policy.

25.     Even according to GM's own example regarding "usage based insurance

providers," GM is only allowed to share drivers' Telematics Data with "usage based insurance providers" where the drivers "elected" to receive such usage-based insurance from their insurers and/or "authorized" their insurers to request their driving Telematics Data from GM. Plaintiff and the Class Members did no such thing. Therefore, GM has no authority to share the Telematics Data with the insurance companies and the insurance companies are not authorized to request such data. Ultimately, Plaintiff and the Class Members are being forced to pay or are faced with the risk of paying higher insurance costs because GM shared their Telematics Data without their consent, effectively forcing them into usage-based insurance services that they never elected to receive.

26.     Even consumers who actively opted in to OnStar services are not apprised of the extent of the data sharing. There is no transparent warning or disclosure that the Telematics Data would be shared with or sold to third parties such as Lexis and in turn, the insurance companies. This practice is misleading and unfair to Plaintiff and the Class Members as Defendants sell the data without the consent from Plaintiffs and the Class Members for profit and cause actual harm not only by invading their privacy rights, but also affecting their auto insurance premium and/or coverage.

27.     GM and OnStar have admitted to their sharing of driving Telematics Data with third parties, such as Lexis, but now contend this data "is no longer being shared with LexisNexis."[6] Regardless, millions of Class Members' Telematics Data have been accessed, recorded, collected, stored, disclosed, shared, and/or sold by GM and OnStar to

---

[6] Smart Driver | Frequently Asked Questions | OnStar Support

third parties, like Lexis, who in turn sold it to auto insurance companies, collectively injuring Plaintiff and the Class Members by causing or putting them at a risk for increased auto insurance premiums.

28.     Lexis offers data analytics to thousands of companies, including auto insurance companies, to allegedly "help insurers and automakers streamline business processes, control costs and improve customer experiences."[7]

29.     Of relevance here is how Lexis sells Plaintiff's and the Class Members' Telematics Data to auto insurers. To do so, Lexis receives data from vehicles, mobile applications, and third-party services, then generates "scores and attributes that are easily ingested into insurance carrier workflows to influence their value chain."[8] Simply put, Lexis receives the drivers' data (without the drivers' knowledge and consent), repackages it, and sells it to auto insurance companies, who then, based on the data, increase the auto insurance premiums or even deny coverage altogether.

30.     Lexis knowingly obtains or purchases the Telematics Data that GM and OnStar collect. Lexis knows or should have known that obtaining the drivers' Telematics Data and selling them to third parties including the auto insurance companies without the knowledge or consent from Plaintiff and the Class Members is unlawful, deceptive, unfair, wrongful conduct.

31.     Plaintiff purchased a 2022 Cadillac Escalade on or about May 2022.

32.     Plaintiff's 2022 Cadillac Escalade came with complimentary OnStar service.

---

[7] Insurance Solutions for Risk Management | LexisNexis Risk Solutions
[8] Solutions for Automakers | LexisNexis Risk Solutions

Plaintiff did not actively subscribe to OnStar at the time of purchase or since and was unaware that his Telematics Data was being accessed, recorded, collected, stored, disclosed, shared, and/or sold by GM and OnStar.

33.     Plaintiff's purchase agreement does not disclose its sharing of his Telematics Data with third-parties, including Lexis. Plaintiff never elected to receive any service from Lexis.

34.     Plaintiff has never knowingly opted into sharing his Telematics Data with anyone, including third parties such as Lexis who share or sell his information to auto insurance companies.

35.     Upon information and belief, Plaintiff's Telematics Data was sold and shared with Lexis without his knowledge or consent.

36.     Upon information and belief, Lexis shared the Plaintiff's Telematics Data with his insurance company without his knowledge or consent which resulted in an increased auto insurance premium.

37.     Plaintiff has not recently filed an insurance claim, gotten into an automotive accident, received a speeding ticket, or experienced any other incident that would result in an insurance premium increase.

38.     Plaintiff believes that GM and OnStar misled consumers, such as himself and Class Members, about their data-sharing practices as he never knowingly consented to these practices.

39.     Defendants' improper actions caused actual injury to Plaintiff. Plaintiffs had reasonable expectation that his Telematics Data would be kept private. Defendants' action

of secretly accessing, recording, collecting, storing, disclosing, sharing, and/or selling of

his Telematics Data was an invasion of Plaintiff's privacy rights which also affected his

insurance premium all without his  knowledge or consent.

## V.    CLASS ACTION ALLEGATIONS

40.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of himself and the following proposed class ("Class")

and Minnesota Subclass (collectively, "Classes")[9]:

> **Class**: All persons who leased or owned a GM vehicle whose driving
> Telematics Data was collected and shared by Defendants with a third
> party without their consent.
>
> **Minnesota Subclass**: All persons in Minnesota who leased or owned
> a GM vehicle whose driving Telematics Data was collected and
> shared by Defendants with a third party without their consent.

41.    Excluded from the Classes are the Defendants, any parent companies,

subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-

conspirators, all governmental entities, and any judge, justice, or judicial officer presiding

over this matter.

42.    This action is brought and may be properly maintained as a class action.

There is a well-defined community of interests in this litigation and the members of the

Class are easily ascertainable.

43.    *Numerosity*. The members in the proposed Classes are so numerous that

individual joinder of all members is impracticable, and the disposition of the claims of the

---

[9] Plaintiff reserves the right to propose other or additional classes or subclasses in their
motion for class certification or subsequent pleadings in this action.

members of all Classes in a single action will provide substantial benefits to the parties and Court. In 2023, GM new vehicle sales in the US were 2.6 million units.[10] GM's new vehicle sales in the US have been somewhere between 2 and 3 million units every year in the last 10 years.[11]

44. *Typicality*. Plaintiff and the Class Member's claims are typical of the claims of the members of the Class and Minnesota Subclass. Like other Class Members, Plaintiff's Telematics Data was improperly collected and shared with third parties without his consent. Plaintiff and the Class Members were subjected to Defendants' illegal, deceptive, unfair, and impermissible conduct. Plaintiff's and the Class Members' claims and the claims of all Class Members arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class have been similarly affected by Defendants' wrongful conduct.

45. *Commonality*. There are questions of law and fact common to the Class, and these questions predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

    A.    Whether GM and OnStar collected and tracked Plaintiff's and the Class Members' driving behavior;

    B.    Whether Plaintiff and the Class Members consented to have their data

---

[10] Nathan Gomes, *GM leads US auto sales as industry concludes best year since pandemic*, REUTERS (Jan. 3, 2024, https://www.reuters.com/business/autos-transportation/us-auto-sales-likely-jumped-2023-new-year-be-challenging-2024-01-03/).

[11] *See* https://www.goodcarbadcar.net/general-motors-us-sales-figures/ (last accessed April 26, 2024)

shared with Lexis or other third parties;

C.     Whether Lexis obtained Plaintiff's and Class Members' Telematics Data without consent;

D.     Whether Lexis sold Plaintiff's and Class Members' Telematics Data to third parties without consent;

E.     Whether Defendants owed a duty to disclose;

F.     Whether Defendants failed to disclose the accessing, recording, collecting, storing, disclosing, sharing, and/or selling of Plaintiff's and the Class Members' Telematics Data;

G.     Whether Defendants failed to obtain consent from Plaintiff and the Class Members for the accessing, recording, collecting, storing, disclosing, sharing, and/or selling of Plaintiff's and the Class Members' Telematics Data;

H.     Whether Defendants omitted and misrepresented material facts to purchasers and lessees of GM vehicles;

I.     Whether Defendants' omissions and misrepresentations regarding the vehicles and OnStar service were likely to mislead or deceive a reasonable consumer;

J.     Whether Plaintiff's and the Class Members' vehicles were worth less than as represented as a result of the conduct alleged herein;

K.     Whether Defendants' practices were unfair or deceptive;

L.     Whether Defendants' practices constitute an invasion of privacy;

M.      Whether Defendants' conduct was knowing, willful reckless, and/or negligent;

N.      Whether Defendant Lexis willfully violated the FCRA;

O.      Whether Defendant Lexis negligently violated the FCRA;

P.      Whether Defendants violated the laws of the State of Minnesota;

Q.      Whether Plaintiffs and the Class Members were harmed by Defendants' conduct;

R.      Whether Plaintiff and the Class Members are entitled to actual compensatory, statutory, other forms of damages, and other monetary relief; and

S.      Whether Plaintiff and Class Members are entitled to equitable relief including injunctive relief, restitution, or disgorgement.

46.     *Adequacy of Representation*. Plaintiff will fairly and adequately represent and protect the interests of the Classes, have no interests incompatible with the interests of the Classes, and have retained counsel competent and experience in class action and consumer protection litigation.

47.     *Superiority*. Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative litigation, it would be infeasible for members of the Classes to redress the wrongs done to them.

48.     *Predominance*. Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

49.     Defendants have engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' Telematics Data was collected, transmitted, and sold in the same way.

50.     As a result of the foregoing, class treatment is appropriate.

## VI.     TOLLING OF THE STATUTES OF LIMITATION

51.     Any and all applicable statute of limitations have been tolled by Defendants' knowing and active concealment of the facts alleged herein. Plaintiff and the Class Members could not have reasonably discovered Defendants' tracking, collecting, and sharing of drivers' Telematics Data until the March 11, 2024 New York Times news article was published.

52.     Defendants had and still have the duty to disclose to Plaintiff and the Class Members their practice of tracking, collecting, and sharing of the drivers' Telematics Data. As a result of Defendants' active concealment, any and all applicable statute of limitations otherwise applicable to the claims alleged herein have been tolled.

## FIRST CLAIM FOR RELIEF
### Common Law Invasion of Privacy
### (On Behalf of Plaintiff and the Classes)

53.     Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint as if fully set forth herein.

54.     Plaintiff and the Class Members have a reasonable expectation of privacy within the confines of their vehicle.

55.     Plaintiff and the Class Members have a common law, legally protected right or interest in the privacy of their own personal data, including their driving

Telematics Data, and are entitled to the protection of their information and property against unauthorized access.

56.     Plaintiff and the Class Members reasonably expected their driving Telematics Data would not be collected by GM and/or shared with third parties without their express consent.

57.     GM and OnStar unreasonably and unlawfully invaded the privacy rights of Plaintiff and Class Members by (a) accessing, recording, collecting, and storing Plaintiff's and the Class Members' Telematics Data; and (b) disclosing, sharing, and/or selling their driving Telematics Data to Lexis without the informed and clear consent of Plaintiff and Class Members.

58.     Lexis unreasonably and unlawfully invaded the privacy rights of Plaintiff and Class Members by further disseminating this data to third parties, including auto insurance companies, for commercial gain.

59.     In intentionally sharing Plaintiff's and Class Members' Personal Information, GM and OnStar acted in reckless disregard of their privacy rights, intruded into their seclusion, and publicly disclosed their private data.

60.     As a direct and proximate result of Defendants' unlawful invasions of privacy, Plaintiff's and Class Members' private, personal, and confidential information has been accessed or is at imminent risk of being accessed, and their reasonable expectations of privacy have been intruded upon and frustrated. Plaintiff and Class Members have suffered damages and are entitled to appropriate relief.

61.     Plaintiff and the Class Members are entitled to actual, compensatory, and

any other monetary relief along with equitable relief including injunctive relief, restitution, and disgorgement of profit for invasion of their privacy in an amount to be determined by a jury at trial.

## SECOND CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of Plaintiff and the Classes)

62. Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint as if fully set forth herein.

63. Defendants have received a benefit from Plaintiff and the Class Members by surreptitiously accessing, recording, collecting, storing, disclosing, sharing, and/or selling the Telematics Data of Plaintiffs and the Class Members.

64. The benefit bestowed upon Defendants was non-gratuitous and Defendants realized value from this benefit in the form of revenue by selling the Telematics Data of Plaintiff and the Class Members to other Defendants and auto insurance companies. Plaintiff and the Class Members received nothing from this transaction.

65. While Defendants received a benefit, Plaintiff and the Class Members suffered a detriment. The Telematics Data of Plaintiff and Class Members has a high, tangible value in Defendant's dealings with third parties, including auto insurance companies. Namely, Defendant Lexis and auto insurance companies pay for that data, giving it value. Defendants garner revenue from this data because of the insight it provides into their driving habits.

66. Defendants, without the knowledge or consent of Plaintiff and Class Members, took control over and appropriated this Telematics Data by capturing and

transmitting it to third parties, including Lexis and auto insurance companies.

67.     Defendants have been unjustly enriched in retaining revenues derived from the sale of Plaintiff's and the Class Members' Telematics Data. Retention of those monies is unjust and inequitable because Defendants did not obtain Plaintiff's and the Class Members' consent before selling their data to third parties.

68.     Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must disgorge the ill-gotten gains and pay restitution to Plaintiff and the Class Members for its unjust enrichment, as ordered by the Court.

**THIRD CLAIM FOR RELIEF**
**Violation of the Minnesota Unlawful Trade Practices Act,**
**Minn. Stat. § 325D.13, *et seq*.**
**(On Behalf of Plaintiff and the Minnesota Subclass)**

69.     Plaintiff, individually and on behalf of the Minnesota Subclass, re-alleges and incorporates herein by reference all prior allegations in this Complaint as if fully set forth herein.

70.     Defendants are a "person" within the meaning of the Minnesota Unlawful Trade Practices Act ("MUTPA").

71.     Defendants violated the MUTPA by knowingly misrepresenting, concealing, omitting, and/or engaging in other deceptive conduct which was likely to deceive or cause misunderstanding, and did in fact deceive Plaintiff and the Minnesota Subclass with respect to the accessing, recording, collecting, storing, disclosing, sharing, and/or selling of Plaintiff's and the Minnesota Subclass' Telematics Data.

72.     Defendants knew or should have known that this illegal accessing, recording, collecting, storing, disclosing, sharing, and/or selling of Plaintiff' and the Minnesota Subclass' Telematics Data without their consent was likely to, and did in fact, deceive Plaintiff and the Minnesota Subclass.

73.     Defendants intended for Plaintiff and the Minnesota Subclass to rely on their omissions, concealment, and/or deceptions regarding the accessing, recording, collecting, storing, disclosing, sharing, and/or selling of Plaintiff's and the Minnesota Subclass' Telematics Data.

74.     Defendants' conduct described herein occurred repeatedly in their trade or business and were capable of deceiving Plaintiff and the Minnesota Subclass and in fact did deceive them.

75.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Minnesota Subclass have suffered actual injury, in addition to invasion of their privacy, which affects or poses substantial risk of affecting their insurance premium and coverage.

76.     Pursuant to Minn. Stat. §8.31, subd. 3a, and §325D.15, Plaintiff and the Minnesota Subclass seek actual, compensatory, and other allowable monetary damages, along with any equitable relief including injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MUTPA.

**FOURTH CLAIM FOR RELIEF**
**Violation of the Minnesota Uniform Deceptive Trade Practices Act,**
**Minn. Stat. § 325D.44, *et seq*.**
**(On Behalf of Plaintiff and the Minnesota Subclass)**

77.     Plaintiff, individually and on behalf of the Minnesota Subclass, re-alleges and incorporates herein by reference all prior allegations in this Complaint as if fully set forth herein.

78.     Defendants are a "person" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA").

79.     Without Plaintiff's and the Minnesota Subclass' consent, Defendants willingly engaged in deceptive trade practices, in violation of the MUDTPA, by misrepresenting, concealing, and/or omitting the collection, sharing, selling, and publishing of personal Telematics Data, thereby infringing upon the privacy rights and consumer expectations of Plaintiff and the Minnesota Subclass.

80.     The sharing, selling, and publishing of this Telematics Data has led to misleading representations of the driving behaviors of Plaintiff and the Minnesota Subclass which has adversely affected their ability to obtain reasonable auto insurance premiums, or auto insurance coverage at all.

81.     Defendants knew or should have known of this collection, sharing, selling, and publishing of Telematics Data.

82.     Defendants knew or should have known that this illegal accessing, recording, collecting, storing, disclosing, sharing, and/or selling of Plaintiff's and the Minnesota Subclass' Telematics Data without their consent was likely to, and did in fact, deceive Plaintiff and the Minnesota Subclass.

83.     Defendants intended that Plaintiff and the Minnesota Subclass would rely on Defendants' omissions, concealment, and/or deceptions regarding the Telematics Data.

84.     Defendants' conduct and omissions described herein occurred repeatedly in their trade or business and were capable of deceiving a substantial portion of the consuming public.

85.     The material facts concealed by Defendants – that the vehicles were sold with these applications that collected and disseminated drivers' Telematics Data – were material facts in that Plaintiff and the Minnesota Subclass would consider them important in selecting a vehicle to purchase or lease.

86.     Defendants intended that Plaintiff and the Minnesota Subclass would rely on their omissions, concealment, and other deceptive conduct when driving the automobiles, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

87.     Defendants failed to discharge their duty to disclose the collection, sharing, selling, and publishing of Plaintiff' and the Minnesota Subclass' Telematics Data. Defendants further failed to discharge their duty to obtain express and informed consent to the accessing, recording, collecting, storing, disclosing, sharing, and/or selling of Plaintiff's and the Minnesota Subclass' Telematics Data.

88.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Minnesota Subclass have suffered actual damages in that they paid an increased auto insurance premium and his privacy and control over his personal data was diminished.

89.     Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.45, Plaintiff and the Minnesota Subclass seek actual, compensatory, and other allowable monetary damages, along with any equitable relief including injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations

of the MUDTPA.

## FIFTH CLAIM FOR RELIEF
### Violation of the Minnesota Prevention of Consumer Fraud Act,
### Minn. Stat. § 325F.69, et. seq.
### (On Behalf of Plaintiff and the Minnesota Subclass)

90.     Plaintiff, individually and on behalf of the Minnesota Subclass, re-alleges and incorporates herein by reference all prior allegations in this Complaint as if fully set forth herein.

91.     Plaintiff the members of the Minnesota Subclass are residents of the State of Minnesota.

92.     Defendants are a "person" within the meaning of the Minnesota Prevention of Consumer Fraud Act ("MPCFA").

93.     The Omissions were made in connection with the sale of the automobiles and/or registration of OnStar services to Plaintiff and the Minnesota Subclass.

94.     Defendants knowingly acted, used, and employed fraud, false pretenses, and deceptive practices in connection with the sale of automobiles and registration of OnStar services. Specifically, Defendants misrepresented, concealed, omitted, and/or failed to disclose the collection, sharing, selling, and publishing of Plaintiff's and the Minnesota Subclass' Telematics Data.

95.     Defendants knew or should have known the Telematics Data collected by them was uncontextualized and misleading, and that the information would be used by third-parties, such as auto insurance companies, to evaluate Plaintiff's and the Minnesota Subclass' eligibility for auto insurance and/or cost of their auto insurance premium.

96.    Defendants' unfair or deceptive acts or practices were likely to deceive reasonable consumers about the data collection and sharing practices alleged herein. Plaintiff and the Minnesota Subclass relied on, and were in fact deceived by, Defendants' omissions with respect to the data collection and sharing of Telematics Data.

97.    The facts concealed or not disclosed by Defendants were material facts in that Plaintiff and the Minnesota Subclass, and any reasonable consumer, would have considered them in deciding whether to purchase and/or the automobiles or register for OnStar services.

98.    Defendants' omissions were made to customers in Minnesota, including Plaintiff and the Minnesota Subclass, thus the cause of action serves the public benefit of informing Minnesota consumers about the collection and sharing of Telematics Data.

99.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Minnesota Subclass have suffered actual damages in that they overpaid for auto insurance and decreased value of their driving Telematics Data.

100.   Pursuant to Minn. Stat. §8.31, subd. 3a, and §325F.69, Plaintiff and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and other just and proper relief available thereunder for Defendants' violations of the MPCFA.

**SIXTH CLAIM FOR RELIEF**
**Violation of the Fair Credit Reporting Act,**
**15 U.S.C. §§ 1681, *et. seq.***
**(Against Defendant Lexis On Behalf of Plaintiff and the Classes)**

101.   Plaintiff re-alleges and incorporates herein by reference all prior allegations

in this Complaint as if fully set forth herein.

102.    As individuals, Plaintiff and all Class Members are entitled to protections of the Fair Credit Reporting Act ("FCRA"). 15 U.S.C. § 1681a(c).

103.    Defendant Lexis is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

104.    Whenever preparing a consumer report, every consumer reporting agency, including Lexis, "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

105.    Lexis, acting as a consumer reporting agency, has failed to maintain procedures to assure maximum possible accuracy of Plaintiff's and the Class Members' Telematics Data. Despite this failure, Lexis has shared and/or sold this inaccurate Telematics Data to third parties, such as auto insurance companies.

106.    Lexis has knowingly and willfully engaged in the collection, storage, disclosure, sharing, and/or selling of inaccurate Telematics Data pertaining to Plaintiff and Class Members.

107.    As a result of Lexis' conduct, third parties, including auto insurance companies, review and rely on this inaccurate Telematics Data pertaining to Plaintiff and Class Members.

108.    Consequently, Plaintiff and Class Members suffered actual harm in that they overpaid for auto insurance and decreased value of their driving Telematics Data.

109.    The foregoing acts constitute willful, reckless, and/or negligent violations of

the FCRA, including but not limited to 15 U.S.C. § 1681e(b).

110.    As a result of each and every willful violation of the FCRA, Plaintiff and the Class Members seek actual and statutory damages pursuant to 15 U.S.C. § 1681a(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681a(3).

111.    As a result of each and every negligent violation of the FCRA, Plaintiff and the Class Members seek actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(2) of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiff as a Class Representative and designation of Plaintiff's counsel as Class Counsel;

C.    An order awarding equitable relief including declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

D.    An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

E.    An award of pre- and post-judgment interest;

F.    An award of costs pursuant to 29 U.S.C. § 1132(g);

G.     An award of attorneys' fees pursuant to 29 U.S.C. § 1132(g);

H.     An award of actual and statutory damages; and

I.     Such other and further relief as the Court deems just, necessary, and proper,

including, without limitation, any applicable penalties and interest.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: April 26, 2024                    Respectfully submitted,

*/s/ Catherine K. Smith*
Daniel E. Gustafson (#202241)
Catherine K. Smith (#0353723)
Mary M. Nikolai (#0400354)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
csmith@gustafsongluek.com
mnikolai@gustafsongluek.com

***Counsel for Plaintiff and the Classes***